IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AISHA TARTOUR, Administratrix of the Estate of Ali Tartour, Deceased,<br>                Plaintiff,<br><br>v.<br><br>SAFECO INSURANCE COMPANY OF ILLINOIS,<br>                Defendant. | CIVIL ACTION<br><br><br>NO. 17-1896 |

DuBois, J.                                                                                                    January 28, 2020

**M E M O R A N D U M**

## I.   INTRODUCTION

This action arises out of an insurance coverage dispute between plaintiff Aisha Tartour, administratrix of the estate of her deceased father, Ali Tartour, and defendant Safeco Insurance Company of Illinois, regarding fire damage to Ali Tartour's home. Presently before the Court is Defendant's Motion for Summary Judgment. For the reasons that follow, the Court grants defendant's motion.

## II.   BACKGROUND

Defendant Safeco provided homeowner's insurance to decedent Ali Tartour. Statement of Material Facts in Support of Def.'s Mot. for Summ. J. ("Def. SMF") ¶ 4. Decedent lived in the covered residence with his two adult children, Aisha Tartour ("Aisha") and Hussein Tartour ("Hussein"); Aisha's son; and Aisha and Hussein's mother, Marcela Tartour ("Marcela"). *Id.* ¶ 36. On February 1, 2017, decedent suffered a major brain aneurysm. *Id.* ¶¶ 37–39. That same day decedent underwent surgery, but his condition did not improve and he was put on life support. *Id.* ¶ 40. After consulting with medical staff, Aisha and Marcela decided to remove decedent from life support on February 2, 2017, in accordance with requests he had previously

communicated. *Id.* ¶ 41. When Aisha informed her brother Hussein—who was at the covered residence at the time—that their father should be removed from life support, Hussein disagreed with the decision. *Id.* ¶ 43. Hussein became upset and subsequently sent his sister multiple Facebook messages that included suicidal comments. *Id.* ¶¶ 45–48. Later that night, February 2, 2017, Aisha and her boyfriend drove to the house to check on Hussein and left after he appeared to calm down. *Id.* ¶¶ 50–53.

Early the next morning, Hussein started a fire in his bedroom in an apparent attempt to commit suicide. *Id.* ¶¶ 34, 55–56; Def. Mot. 8, Ex. D. Shortly thereafter, Hussein sent a Facebook message to Aisha, asking her to come to the house and including a photograph of the fire he started. Def. SMF ¶ 56.

Hussein pled guilty to the charge of Failure to Control/Report Dangerous Fire on March 13, 2018. *Id.* at ¶ 33. In his plea colloquy, Hussein admitted that he started the fire by lighting his bedroom door frame on fire, with the goal of killing himself. *Id.* ¶¶ 33–34.[1] However, after igniting the fire, Hussein decided that he did not want to die and panicked. *Id.* ¶ 34. He was unable to put out the fire. *Id.*

At the time he pled guilty, Hussein was 29 years old. *Id.* ¶ 34. Prior to this incident, he had no history of mental health issues, although he was enrolled in a special education program during high school. *Id.* ¶ 63. Hussein had never threatened or attempted suicide and had never been treated by mental health professionals for mental illness. *Id.* ¶ 63–64. After the fire, Hussein was diagnosed with major depressive disorder, intellectual disability, and "other problems related to primary support group." *Id.* ¶ 66.

The Safeco policy at issue in this case covers, *inter alia*, "accidental direct physical loss

---

[1] The Court notes that neither party disputes the fact that the Norristown Fire Department also concluded that the fire had two points of origin and that Hussein used a lighter to light objects in his closet on fire. Def. SMF ¶ 23, Ex. Q.

to property" (the "accidental loss provision"). *Id.* ¶ 4, Ex. C. In addition, the policy contains a coverage exclusion for "Intentional Loss, meaning any loss arising out of any act committed: (a) by or at the direction of any insured; (b) with the intent to cause a loss" (the "intentional loss exclusion"). *Id.* Under the policy, the definition of "insured" includes, *inter alia*, the "named insured" (Ali Tartour) and "residents of the residence premises" who are relatives of the "named insured." *Id.*

On February 5, 2017, plaintiff submitted a notice of loss to Safeco detailing the damage from the fire started by Hussein. Def. SMF ¶ 5–6, Ex. D. On February 21, 2017, defendant denied plaintiff's claim under the policy's intentional loss exclusion. *Id.* ¶ 28, Ex. W. Plaintiff subsequently filed a Complaint against defendant in the Court of Common Pleas of Philadelphia County, asserting claims for (1) breach of contract and (2) bad faith pursuant to 42 Pa. C.S.A. § 8371. Compl. ¶¶ 10–15. Defendant filed a Notice for Removal in this Court on April 25, 2017 (Document No. 1). Defendant then filed its Motion for Summary Judgment on December 28, 2018 (Document No. 15). The motion is fully briefed and ripe for decision.

### III. LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence

3

favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. However, the existence of a mere "scintilla" of evidence in support of the nonmoving party is insufficient. *Id.* at 252. In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (internal citations omitted). The party opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322.

## IV. DISCUSSION

### A. Breach of Contract

In the Complaint, plaintiff asserts that Safeco breached the insurance policy by denying plaintiff's claim on the basis of the intentional loss exclusion. In an insurance coverage dispute under Pennsylvania law, "[t]he interpretation of an insurance contract regarding the existence or non-existence of coverage is 'generally performed by the court.'" *Minnesota Fire and Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004) (internal citation omitted). In interpreting an insurance contract, the Court determines

> the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, we will give effect to the language of the contract. However, where the policy language is ambiguous, it is to be construed in favor of the insured and against the insurer, the drafter of the agreement.

*Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir. 2012) (internal citations and quotations omitted).

The insured first has the burden of making a prima facie showing that her claim falls within the policy's coverage. *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996) (applying Pennsylvania law). If coverage is shown, the insurer then has the

4

burden to prove that a coverage exclusion applies.  *Id.*

### 1. *The Fire Loss Was Not Accidental and Is Not Covered by the Policy*

To determine whether the fire damage in this case is covered by the Safeco policy, the Court must evaluate whether the damage constitutes "accidental direct physical loss to property." Def. SMF ¶ 4, Ex. C.  Based on the record, the Court concludes that the fire caused by Hussein was not accidental and that plaintiff has not made a prima facie showing that her insurance claim is covered.

Under Pennsylvania law, an "accident" in the context of insurance coverage provisions is "an unexpected and undesirable event occurring unintentionally." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (2007) (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 898 (Pa. 2006)).  Courts have emphasized that the "key term in the definition of the 'accident' is 'unexpected' which implies a degree of fortuity." *Id.*  Importantly, damage is not accidental if "the injury was the natural and expected result of the insured's actions." *Id.* (citing *Lower Paxton Twp. v. U.S. Fidelity and Guar. Co.*, 557 A.2d 393, 398 (Pa. 1989)); *see also State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (noting that "[a]n accident, simply stated, is merely an unanticipated event") (citation and quotation marks omitted); *Robinson v. Allstate Prop. & Cas. Ins. Co.*, 306 F. Supp. 3d 672, 679 (E.D. Pa. 2018) (summarizing Pennsylvania case law); *McMahon v. State Farm Fire & Cas. Co.*, No. CIV.A. 06-3408, 2007 WL 137760, at *4 (E.D. Pa. May 8, 2007) ("'Accidental' is an adjective meaning happening by chance, unexpectedly, not in the usual course of things.").

Furthermore, the Pennsylvania Supreme Court has held that in cases where an uninsured third party commits an act causing the injury in question, "[t]he test of whether injury is a result of an accident is to be determined from the viewpoint of the insured." *Mohn v. Am. Casualty Co.*

5

*of Reading*, 326 A.2d 346, 347 (Pa. 1974); *see also Baumhammers*, 938 A.2d at 292.

In this case, plaintiff argues that Hussein is not an insured under the Safeco policy merely because various insurance documents list only Ali Tartour as the "named insured" and because Hussein never negotiated the policy or paid any premiums. Pl. Opp'n 7. However, the policy clearly defines "insured" to include relatives of the "named insured" who reside in the covered residence premises. Def. SMF ¶ 4, Ex. C; Def. Reply 2. This language is not ambiguous. *See 401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (2005) ("Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'") (citation omitted). Hussein—whom plaintiff concedes lived in the covered residence at the time of the fire—is clearly an insured under his father's policy, not an uninsured third party.

For this reason, the Court considers whether, from Hussein's perspective, the fire damage was accidental. It is undisputed that Hussein deliberately set fire to the covered residence. After learning of the decision to remove his father from life support, Hussein communicated to his sister his suicidal feelings and intentions, and he ultimately sent her a photograph of the fire he had started. Def. SMF ¶¶ 45, 48. Hussein later told firefighters that he had intentionally started the fire and admitted in his guilty plea colloquy that he had started the fire in an effort to kill himself. *Id.* ¶¶ 23, 34. Although his primary purpose was to commit suicide, the resulting damage to the house was the "natural and expected result" of his actions. *Baumhammers*, 938 A.2d at 292. The Court thus concludes that the fire loss was not accidental and that the accidental loss provision does not apply.

  2.  *Alternatively, the Intentional Loss Exclusion Applies*

Because the Court concludes that the policy does not cover the fire loss in this case,

Safeco need not show that a coverage exclusion applies. *See, e.g.*, *Robinson*, 306 F. Supp. 3d at 680–81. Nevertheless, the Court will evaluate the applicability of the intentional loss exclusion because the parties have fully briefed this issue. *Id.*

For the intentional loss exclusion to apply, the Court must find that the fire and smoke damage arose out of an act committed "(a) by or at the direction of any insured; (b) with the intent to cause a loss." Def. SMF ¶ 4, Ex. C. First, as discussed *supra*, Hussein is an insured under the policy. With respect to the second requirement, plaintiff contends that, in lighting the fire, Hussein did not specifically intend to damage the house, so the provision does not apply. Pl. Opp'n 8–9. Further, plaintiff argues that, because Hussein changed his mind about harming himself and then failed to take adequate measures to extinguish the fire, Hussein's actions were merely reckless, not intentional. *Id.*

The Court rejects these arguments. Pennsylvania courts interpreting intentional loss exclusion provisions have held that "[a]n insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 989 (Pa. Super. Ct. 1986). Furthermore, "[a]n actor is presumed to intend the natural and expected results of his actions." *Mehlman*, 589 F.3d at 114. Intentional loss exclusions extend to "injury and damage of the same general type which the insured intended to cause." *Elitzky*, 517 A.2d at 989. As the Court explained *supra*, the fire and smoke damage was the "natural and expected" result of the fire Hussein started in his bedroom, and such damage was of the "same general type" which he intended to cause. *Mehlman*, 589 F.3d at 114; *Elitzky*, 517 A.2d at 989. Moreover, plaintiff has not produced any medical evidence or expert testimony showing that Hussein lacked the ability to commit an intentional act. Def. SMF ¶¶ 67–68; *see also Robinson*, 306 F. Supp. 3d at 681–84

7

(applying the *M'Naghten* test to determine whether plaintiff was unable to commit an intentional act). The Court concludes that Hussein acted intentionally under Pennsylvania law and that the intentional loss exclusion applies to plaintiff's claim. Plaintiff's breach of contract claim is therefore rejected.

### B. Bad Faith

In Count II of the Complaint, plaintiff asserts a claim of bad faith under 42 Pa. C.S.A. § 8371. "To recover for bad faith, 'a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'" *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 522 (3d Cir. 2012) (quoting *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006)).

As discussed *supra*, Hussein is an insured under the policy and the intentional loss exclusion applies, thus barring plaintiff's insurance claim. The Court therefore concludes that undisputed evidence demonstrates that defendant had a reasonable basis for denying plaintiff's claim. The bad faith claim is therefore rejected.

### V. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment. Judgment is entered in favor of defendant Safeco Insurance Company of Illinois and against plaintiff Aisha Tartour, Administratrix of the Estate of Ali Tartour, Deceased. An appropriate order follows.